BALBINO NAVARRO, Plaintiff and Appellant, v. HERMINIO CALDERÓN, Defendant and Appellee.

No. 8396. Argued January 14, 1943.—Decided February 2, 1943.

*R. R. Rivera Correa* for appellant. *Herminio Calderón*, appellee, did not appear.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

The plaintiff herein, together with his brothers, inherited from their grandmother, Lorenza López, a certain rural property situated in Loíza. There were several heirs and since the property was of small value, in order to avoid the expenses of title proceedings they all agreed to institute a dominion title proceeding in favor of the plaintiff, and that the latter in turn should convey the property in favor of a person trusted by all, who would make a loan secured by said property and in this manner pay each heir his share, and thereafter convey the property to the plaintiff. This

agreement was carried into effect and the plaintiff employed the services of Attorney José Soto Rivera to institute the dominion title proceedings, it being agreed that the attorney would receive in payment for the services rendered, after the proceedings were had, a parcel of said property having an area of 9.75 acres. After the dominion title proceedings were had, the plaintiff simulated the sale of the property in favor of Herminio Calderón, a person trusted by all the heirs, who, according to the plaintiff and José Soto Rivera, conveyed to Gervasia Bracero the 9.75 acres to which Soto Rivera was entitled, simulating a contract of sale with said lady. Subsequently, Herminio Calderón mortgaged the property and again acquired from Miss Bracero the 9.75 acres, joining them to the main property. It does not appear from the evidence whether the heirs of Lorenza López received from Calderón their share, but it does appear that the plaintiff employed the services of Attorney A. Lamour to demand from Herminio Calderón the reconveyance of the property, and that plaintiff agreed with Lamour to give him half of the property in payment for his services. When Lamour made the demand upon Calderón, the latter consented immediately to convey the property to the plaintiff and, following instructions of the latter, he executed a deed on October 5, 1931, before Notary Diego O. Marrero, by virtue of which the defendant simulated the sale of said property to the plaintiff and to Alejandro Lamour, share and share alike, for the alleged price of $5,000, which the defendant admitted having received from the purchasers prior to the execution of the deed, of which amount the purchasers kept $800 to pay the above-mentioned mortgage.

Although the plaintiff was always in possession of the property, about nine years after Herminio Calderón had reconveyed the title to the plaintiff, the latter brought the present action against the former, seeking the nullity of the deed of sale which he executed in favor of Calderón without

*causa* or consideration, and praying that said deed and all the titles resulting from Calderón's title be canceled in the registry, as well as all the entries to which said deeds gave rise in the registry of property.

 In view of the unlawful manner in which the plaintiff acquired his title over the property, by necessarily deceiving the court which approved the record of ownership in his favor, and by offering false evidence to the effect that he had been in possession of the property, as owner, quietly, publicly, and peacefully, and uninterruptedly, for such time as required by law, we think that he is not entitled, under such conditions, to invoke the aid of the courts, since, if the complaint were sustained, it would operate as an acknowledgment of the simulated title of ownership of the property in question. On that ground alone the judgment dismissing the complaint should be affirmed. But disregarding for the sake of argument, the unlawfulness of the title of ownership of the plaintiff, we still ask: What is the practical purpose of undoing judicially what was extrajudicially undone by the parties themselves? Surely this is not the real purpose of the plaintiff. But if it were, we would have to agree with the lower court that where an action has for its only purpose the decision of abstract questions, it is purely academic and therefore does not lie. And if, as it appears from the whole case and the trial judge rightly suspected, the real purpose that the plaintiff had in bringing this action was to obtain indirectly the nullity of the title which Lamour had acquired of one-half of the property, in such case, there is no doubt that the plaintiff took the wrong course.

Assuming that the court would render an academic judgment in his favor, said judgment could in no way prejudice Lamour, for the simple reason that the latter is not a party to this suit, and therefore he has not been heard in his own defense. No matter from what viewpoint the case is an-

alyzed, the conclusion reached by the lower court in its judgment is entirely correct.

The judgment is affirmed.